## SHOE v. GIMBEL et al.

(Circuit Court, E. D. Pennsylvania. August 9, 1899.)

1. PATENTS—IMPROVEMENTS—UTILITY AND INVENTION.

Mere utility does not establish patentability, and it is not every slight improvement that is the result of the exercise of inventive faculty.

2. SAME—BICYCLE SADDLES.

The Shoe patent, No. 558,218, for an improvement in bicycle saddles having flat springs, and consisting in providing a support against which the under surface of the spring may impinge in case of sudden jolting, thereby preventing breakage of the spring, is void for want of patentable invention. And, even if the claim can be sustained, it must be restricted to the forms shown and described, and is therefore not infringed by defendant.

This was a suit in equity by William W. Shoe against Jacob Gimbel and others, trading as Gimbel Bros., for alleged infringement of a patent for an improvement in bicycle saddles.

Thomas D. Mowlds, for complainant.

W. A. Redding, for respondents.

GRAY, Circuit Judge. This is a suit brought to restrain the defendants from infringing letters patent No. 558,218, granted to William W. Shoe, and dated April 14, 1896, for an improvement in bicycle saddles. The bill alleges an infringement, and prays the usual relief of injunction, and an account of profits and assessment of damages. The answer formally denies the fact of invention, and sets up the defense of anticipation, and consequent nonpatentability, and noninfringement. The object and character of the invention are stated in the specifications of the patent, in lines 15 to 50, p. 1, as follows:

"My invention relates to bicycle saddles that are made with a flat spring, and the object of my improvement is to provide a support against which the under surface of the saddle spring impinges when the spring is depressed or bent down by the weight of the rider, and by this means avoid the breakage so common in springs of this class. I accomplish the desired result by attaching the spring directly upon the saddle post, or by extending the wedge-shaped block that is usually placed between the spring and the saddle post on a line practically parallel with the horizontal part of the saddle post. As ordinarily constructed, all bicycle saddles using a flat spring have a wedge-shaped block, about an inch long, interposed between the underside of the spring and the top surface of the horizontal part of the saddle post. The top of this wedge block is, by means of the set screw in the saddle clamp, forced up against the under-side of the spring, the whole upper surface of said wedge being in binding contact therewith. Consequently, when the spring is depressed by the weight of the rider it bends sharply over the front and rear corners of the wedge, and in case of a sudden jolt, occasioned by the wheels of the cycle striking a rut or any obstruction, the spring will very often break at these places. With my improvement the liability to breakage from this cause does not exist, as the spring, when depressed, does not bend over any corner, but is supported all

along the part that is bent down when the cycle is in use, without in any manner diminishing the elasticity of the spring."

Lines 68-94, p. 1, and lines 1-3, p. 2:

Fig. 1.

Fig. 2.

Fig. 3.

"In Fig. 3, the interposed block or wedge, E, is provided with the front and rear extension e, e. The upper surfaces of these extensions are on a line practically parallel with the horizontal part of the saddle post, and do not touch the under surface of the spring, except when the spring is bent down by the weight of the rider on the saddle. In the form shown in Fig. 1, when the spring is depressed the under surface thereof will come in contact with the saddle post, and be supported thereby, along the whole of the bent-down portion. When the saddle is properly secured to the post, and the spring supported in the manner shown, unless there is a defect in the material, it is almost impossible to break the spring by any weight that may be placed on the saddle, or from any sudden jolt. When the spring is set directly upon the saddle post, without the intervening wedge or block, E, it is very desirable to use the two set screws, a, a, placed in the angular position shown in Fig. 2, instead of one, as commonly used. By this means the saddle is held more firmly in position, and can be set lower on the frame of the bicycle, than if the set screw was placed directly in the middle of the clamp, D, as in that case the set screw would strike the top of the frame when the saddle post was lowered."

When the complainant filed his application for this patent, he presented six claims, in language as follows:

"Having thus described my invention, what I claim as new, and desire to secure, is: (1) A bicycle saddle having a flat spring resting immediately upon a support that extends thereunder, back and forward of the spring clamp, the under surface of the saddle spring impinging against the extended portions of the support only when the spring is bent down, substantially as shown, and for the purpose described. (2) A bicycle saddle having a flat spring clamped directly upon the horizontal part of the saddle post, substantially as and for the purpose described. (3) In a bicycle, the saddle, A, having therein the flat spring, B, in combination with the block, E, having the extension, e, e, and clamp, D, securing the whole to the saddle post, as shown. (4) In a bicycle saddle, the combination of the saddle, A, having therein the flat spring, B, resting directly upon the saddle post, and the clamp, D, having therein two set screws at an angle to each other, and binding upon the saddle post, substantially as shown, and for the purpose described. (5) A clamp for flat bicycle springs, having therein two set screws, set at such an angle that the points of contact upon the saddle post will be equidistant from the saddle spring,

and out of line with the frame of the bicycle, substantially as shown, and for the purpose described. (6) A wedge block for bicycle saddle springs, having thereon forward and rear extensions that project beyond the spring clamp, and impinge upon the undersurface of the spring only when said spring is depressed, substantially as shown, and for the purpose described."

When the application for this patent was considered by the examiner in the patent office, he rejected all the claims, except claim 5, and in his letter of rejection stated as follows:

"Claims 1, 2, 3, and 6 are rejected on Clarke, 334,164, Jan. 12, 1886, Hale, 339,289, April 6, 1886, and Jett, 433,172, July 29, 1890 (saddles). Claim 4 is rejected, since the form of clamp specified is old. Centering devices for lathes, and journal bearings, take such a form; and, broadly, there is no invention in arranging the set screws at an angle. The function attributed to the construction is not necessarily accomplished by arranging the set screws at an angle. Claim 5, which specifies the specific arrangement of the set screws, is, as at present advised, allowable."

The complainant fully acquiesced in the conclusion of the examiner, and canceled all the rejected claims, and accepted the patent with the single claim, which is substantially the same as claim 5 of those presented with his application. The patent therefore contains only one claim, which reads as follows:

"A clamp for bicycle springs, having therein two set screws, set at such an angle that the points of contact upon the saddle post will be equidistant from the saddle spring, and out of line with the frame of the bicycle, substantially as shown, and for the purpose described."

Even with the presumption in favor of patentability which arises from the issuance of a patent, it is hard to understand on what principle this claim, as allowed, covers a device which, as the result of invention, is patentable. If, as we have seen, the contrivance of a steel block in the clamping ring, between the underside of a flat spring and the top of the saddle post, with tapering extensions front and back, as set forth in the specifications and drawings, had been anticipated in principle, and lacked novelty, the claim seems to rest upon the invention of a combination of this device with a clamped ring held by two set screws instead of one. There is also, it will be observed in the specifications, a modification, in which the flat saddle spring rests directly on the saddle post, which is held securely in position by the two set screws. The advantage claimed, in case a block with extensions as shown is used, between the saddle spring and post, is that it presents a bearing all along its surface for the spring when bent down by the weight of the rider, and does away with the liability of the spring to break when pressed over the sharp edge of the block without such tapering extensions. The same advantage is claimed when the spring rests directly on the saddle post, without the intervention of the block, the post being held securely by the two set screws. It is also claimed that the two set screws, instead of one, underneath, permit a wider adjustment of the saddle on the saddle post, both up and down and horizontally. The patentee in this case does not claim the invention of two set screws for securing the saddle to a saddle post. What he claims, to use the language of his brief, is:

"A claim for bicycle springs, constructed substantially as shown, and having therein two set screws, set at such an angle that the points of contact upon the

saddle post will be practically equidistant from the saddle spring, and out of line with the frame of the bicycle."

It is difficult to see how the claim, as thus stated, involved any invention. If, as it is admitted, the use of the two set screws instead of one is not new, the setting of them at such an angle as to avoid contact with the frame of the bicycle can hardly be said to have been an exercise of the inventive faculty. The contrivance is one which we think would naturally suggest itself to any good mechanic who had that object in view. Nor does the combination of this old device with the contrivance for creating a bearing for the saddle spring that would tend to prevent breaking appear to have produced any new result; each part of the combination acting in the old way, and accomplishing the result for which it was intended, independently of the other part of the combination. Doubtless, the clamp, as arranged by the complainant, was useful, and had some of the advantages stated, in the construction of bicycles. But mere utility does not establish patentability. It is not every slight improvement in a mechanism that is the result of the exercise of the inventive faculty. In the progress of the arts, such improvements are constantly developing themselves, almost, but are at any rate clearly the result of obvious mechanical suggestion. As has been said by the supreme court more than once, to grant patent monopolies for such improvements would not be to encourage invention, but would impose upon mechanics and the public generally burdens for which there would be no adequate compensation.

But, irrespective of this view of the case, undoubtedly the claim of complainant's patent, in connection with what is set forth in the specifications, and in the light of the prior state of the art, must be limited and restricted to a clamp when provided with a wedge-shaped block, constructed with the front and rear extensions, as shown in Fig. 3 of the drawing, and described in the specifications of the patent, so that all the portion of the saddle spring which is bent down or depressed under the weight of the rider will bear on a continuous surface of the wedge-shaped block, and not be bent over sharp edges or corners which have a tendency to break or snap the spring. To protect the spring from the tendency to break, when thus adjusted, over a block with square upright edges, seems to have been the chief object of the complainant's device, as gathered from the specifications. In the specifications of the patent, as already recited (lines 28–44, p. 1), it is stated as follows:

"As ordinarily constructed, all bicycle saddles using a flat spring have a wedge-shaped block, about an inch long, interposed between the underside of the spring and the top surface of the horizontal part of the saddle post. The top of this wedge or block is, by means of the set screw in the saddle clamp, forced up against the underside of the spring, the whole upper surface of said wedge being in binding contact therewith. Consequently, when the spring is depressed by the weight of the rider it bends sharply over the front and rear corners of the wedge, and in case of a sudden jolt, occasioned by the wheels of the cycle striking a rut or any obstruction, the spring will very often break at these places."

The structures put in evidence by complainant as having been bought from defendants, and constituting the infringement com-

plained of, fit precisely this description of bicycle saddles, "as ordinarily constructed." They have a flat spring, and a wedge-shaped block, about an inch long, interposed between the underside of the spring and the top surface of the horizontal part of the saddle post. The top of the wedge or block is, by means of the set screws, forced up against the underside of the spring, the whole upper surface of said wedge being in binding contact therewith. Consequently, when the spring is depressed by the weight of the rider it bends sharply over the front and rear edges of the wedge, and in case of a sudden jolt the spring will very often break at these places. This, then, is the very fault that the complainant alleges in his specifications he desired to obviate, and places the defendants' clamps outside of the complainant's alleged invention, as stated by himself. To hold otherwise would accord to the complainant the invention of, and a patent monopoly for, the use of two set screws instead of one, which, as we have shown, cannot be done. The bill of complaint in this case therefore must be dismissed, with costs to be taxed.